UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMERISOURCEBERGEN DRUG CORPORATION,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>BEDARD PHARMACY INC.,<br><br>　　　　　　Defendant. | :<br>:<br>:  CIVIL ACTION NO. 05 10131 PBS<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR TRANSFER VENUE**

　　Plaintiff, AmerisourceBergen Drug Corporation ("Amerisource") respectfully submits this memorandum of law in opposition to Defendant Bedard Pharmacy, Inc.'s ("Bedard") motion to dismiss for lack of personal jurisdiction and/or improper venue or, in the alternative, to transfer venue.

**I.    PRELIMINARY STATEMENT**

　　Bedard is subject to the jurisdiction of this Court and venue is proper. Bedard's attempt to mischaracterize the quality and extent of its contacts with Amerisource in Massachusetts should not be countenanced. Bedard purposefully and knowingly transacted business in the Commonwealth. Bedard's motion should be denied.

**II.    BACKGROUND**

　　Amerisource is a pharmaceutical wholesaler. Bedard operates a retail pharmacy business. On or about September 4, 2002, Amerisource and Bedard executed a Prime Vendor

Agreement. Complaint, Exh. A. In the Prime Vendor Agreement, Bedard agreed to purchase not less than 95% of its prescription pharmaceuticals from Amerisource and to pay for all its pharmaceutical purchases. Id.

Russell Crane, Amerisource's Retail Sales Director for the Northeast Region based in Mansfield and Billerica, Massachusetts, negotiated and executed the Prime Vendor Agreement on behalf of Amerisource. Declaration of Russell C. Crane in Opposition to Defendant's Motion to Dismiss or Transfer Venue dated March 18, 2005 (the "Crane Decl.") ¶ 3. Mr. Crane's contacts at Bedard were Michael Nadeau, President of Bedard and Jack Hellmann, a business consultant who is President of Creative Business Specialists, Inc. based in Norwood, Massachusetts. Bedard retained Mr. Hellmann as its agent prior to the Prime Vendor Agreement negotiations. Crane Decl. ¶ 5.

Between September 2002 and the end of 2004, Bedard purchased all or virtually all of the pharmaceuticals it resold from Amerisource. Complaint, Exh. A. During that time, all pharmaceuticals Bedard purchased were sent from Amerisource's Distribution Center in Mansfield, Massachusetts. Crane Decl. ¶ 7. Bedard sent all product returns back to Amerisource's Distribution Center in Mansfield, Massachusetts. Crane Decl. ¶ 7. During the course of the Bedard/Amerisource business relationship, Bedard personnel made numerous telephone calls to Amerisource's Mansfield facility with questions regarding purchases, returns, product availability, etc. Crane Decl. ¶¶ 8-9.

Ultimately, in the summer of 2004, a dispute arose between Bedard and Amerisource regarding Bedard's non-payment of amounts due. Again, Russell Crane of Amerisource had meetings and telephone calls with Bedard and its agent, Jack Hellmann. Bedard's president,

Michael Nadeau, sent letters to Mr. Crane at Amerisource's offices in Mansfield, Massachusetts. Amerisource was ultimately forced to bring suit against Bedard for its non-payment of amounts due and owing.

### III. ARGUMENT

#### A. This Court Has Personal Jurisdiction Over Bedard

At the outset, this Court has personal jurisdiction over Bedard because jurisdiction is proper under the Massachusetts long-arm statute and the exercise of jurisdiction does not offend Bedard's due process rights. In determining whether a non-resident defendant is subject to jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002).

The Massachusetts long-arm statute provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth." Mass. Gen. L. Ch. 233a, § 3 (1990).

It is well-settled that the "transacting any business" standard in Section 3 of the long-arm statute is very broadly construed. Hahn v. Vermont Law School, 698 F.2d 48, 50 (1st Cir. 1983); Nova Biomedical Corp. v. Moller, 629 F.2d 190, 193 (1st Cir. 1980); Heins v. Wilhelm Loh Wetzlar Optical Mach. GTmbH & Co., 26 Mass. App. Ct. 14, 522 N.E.2d 989, 991, rev. denied, 402 Mass. 1105, 525 N.E.2d 678 (1988). In fact, in determining whether a defendant falls within the purview of the Massachusetts long-arm statute by transacting business within the Commonwealth, the Supreme Judicial Court of Massachusetts has interpreted the state's long-

3

arm statute "as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States."  Daynard, 290 F.3d at 52 (quoting "Automatic" Sprinkler Corp. of America v. Seneca Foods Corp., 361 Mass. 441, 280 N.E.2d 423, 424 (1972)).

A defendant need not have a physical presence in Massachusetts.  Rather the test for determining whether a party transacted business in Massachusetts is whether the defendant attempted to participate in the Commonwealth's economic life.  Hahn, 698 F.2d at 52; Nova, 629 F.2d at 195.

One court recently observed that "'[i]t is clear that anything but the most incidental commercial conduct with a Massachusetts resident is sufficient to satisfy the transacting any business test.'"  GSI Lumonics, Inc. v. Biodiscovery, Inc., 112 F. Supp.2d 99, 105 (D. Mass. 2000) (quoting Foster-Miller, Inc. v. Babcock & Wilcox Canada, 848 F. Supp. 271, 276 (D. Mass. 1994), vacated and remanded on other grounds, 46 F.3d 138 (1st Cir. 1995)).

In this case, Bedard transacted business in the Commonwealth for purposes of the Massachusetts long-arm statute.  First, contrary to what Bedard's President, Michael Nadeau, claims in his Declaration, the Prime Vendor Agreement was negotiated, in part, in Massachusetts.  As set forth more fully in his Declaration, Russell Crane had primary contact with Bedard and its agents in negotiating the Prime Vendor Agreement.  As Mr. Crane explains, prior to executing the Prime Vendor Agreement, Bedard retained a business consultant located in Norwood, Massachusetts named Creative Business Specialists, Inc. and its president Jack Hellmann to act as its agent in negotiating the Prime Vendor Agreement with Amerisource.  Crane Decl. ¶ 5.

By reviewing his calendar, Mr. Crane has confirmed the dates on which he met with Mr. Hellmann in Massachusetts to negotiate the Prime Vendor Agreement and to discuss the Amerisource/Bedard ongoing business relationship. Specifically, on April 25, 2002 and October 31, 2002, Mr. Crane met with Mr. Hellmann at the Amerisource Distribution Center at 219 Medford Street in Malden, Massachusetts. On September 9, 2003 and September 24, 2003, Mr. Crane met with Mr. Hellmann at his office at 1 Walpole Street in Norwood, Massachusetts.

For purposes of determining personal jurisdiction, the acts of an agent are imputed to the principal. United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp., 960 F.2d 1080, 1090 (1st Cir. 1992) ("the contacts of a corporation's agent can subject the corporation to personal jurisdiction. 'Since the corporate personality is a fiction . . . it is clear that unlike an individual its presence without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it.'") (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945)). Thus, contrary to Mr. Nadeau's Declaration, Bedard, through its agent Jack Hellmann, has transacted business in Massachusetts.

Most importantly, after executing the Prime Vendor Agreement, Bedard transacted business with Amerisource in Massachusetts on a daily basis. Between September 2002 when Bedard and Amerisource executed the Prime Vendor Agreement and December 2004, Bedard purchased virtually all of the pharmaceuticals it sold to its retail customers from Amerisource in Mansfield, Massachusetts. See Prime Vendor Agreement (Complaint Exh. A) at 1 ("[Prime Vendor] means Customer [Bedard] purchases from Distributor [Amerisource] no less than 95% of all prescription pharmaceutical Products it purchases. . . ."). Bedard placed orders with

Amerisource on a daily basis. Bedard knew that those orders were filled by the Amerisource Distribution Center in Mansfield, Massachusetts. Crane Decl. ¶ 7. Invoices were sent to Bedard from the Distribution Center in Mansfield, Massachusetts.

When Bedard personnel had questions they called the Amerisource Distribution Center in Mansfield, Massachusetts. Crane Decl. ¶¶ 8-9. As set forth in the Crane Declaration, the Amerisource Customer Service Telephone Tracking Log shows that between October 2003 and November 2004, Amerisource personnel recorded 128 separate calls from Bedard personnel. Crane Decl. ¶ 9, Exh. A. Importantly, Amerisource only recorded Bedard calls on the Tracking Log if there was a need to follow-up on a Bedard question. Crane Decl. ¶ 9. Mr. Crane estimates that Bedard actually placed many more calls to the Mansfield, Massachusetts customer service department because routine calls involving issues like stock availability or technical questions were not recorded on the Tracking Log. Crane Decl. ¶ 9.

Further, as set forth in the Crane Declaration, Mr. Nadeau and other Bedard representatives sent numerous letters to Mr. Crane at his Mansfield, Massachusetts business address. Crane Decl. ¶¶ 10-11, Exhs. B and C.

It is well-settled that in cases like this, involving non-payment of amounts owed to Massachusetts sellers by non-resident purchasers, the purchasers "transacted business" pursuant to the Massachusetts long-arm statute. Daynard, 290 F.3d 42 (non-resident purchasers of legal services subject to personal jurisdiction in case involving breach of oral agreement to pay for services brought by Massachusetts attorney); Buctouche Fish Market, Ltd. v. City Sea Foods, Inc., 735 F. Supp. 441 (D. Mass. 1990) (California lobster purchasers subject to personal jurisdiction in breach of contract action for failure to pay for goods sold and delivered brought by

Massachusetts seller); L&P Converters, Inc. v. H.M.S. Direct Mail Service, Inc., 634 F. Supp. 365 (D. Mass. 1986) (New York paper purchaser transacted business with Massachusetts seller pursuant to Massachusetts long-arm statute); A.J. Cunningham Packing Corp. v. Florence Beef Co., 529 F. Supp. 515 (D. Mass. 1982) (Maryland beef purchaser subject to Massachusetts long-arm statute in action involving breach of contract brought by Massachusetts seller). In short, Bedard "transacted business" in Massachusetts for purposes of the Massachusetts long-arm statute. Mass. Gen. L. Ch. 233a, § 3 (1990).

Further, Bedard has sufficient "'minimum contacts' with Massachusetts 'such that the maintenance of [this] suit does not offend traditional notions of fair play and substantial justice.'" Daynard, 290 F.3d at 60 (quoting Int'l Shoe, 326 U.S. at 316, 66 S.Ct. at 158). In determining whether a defendant has sufficient contacts with the forum for purposes of Due Process, a court in this Circuit must determine whether the defendant's contacts are related to the cause of action, whether the defendant's contacts show a purposeful availment of the forum's business opportunities and whether the exercise of jurisdiction would be reasonable. Daynard, 290 F.3d at 60. The First Circuit in Daynard set forth the three-step Constitutional analysis as follows:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction, must, in light of the Gestalt factors, be reasonable.

Daynard, 290 F.3d at 60-61 (citing Foster-Miller, 46 F.3d at 144).

In this case, Amerisource's breach of contract claim against Bedard arises directly out of Bedard's contacts with Massachusetts. The Prime Vendor Agreement that Bedard breached was negotiated, in part, through Bedard's Massachusetts agent Jack Hellmann in Massachusetts. Crane Decl. ¶¶ 4-5. The business relationship at issue in this case between Amerisource and Bedard was premised on Bedard reaching out to Massachusetts to purchase the goods it needed for its pharmacies. Cf. Daynard, 290 F.3d at 61 ("Daynard's lawsuit is based on his claim that the defendants owe him money for his work pursuant to an agreement initiated by the defendants while physically present in Massachusetts and performed, in part, in Massachusetts. This relationship contemplated ongoing interaction between Daynard, in Massachusetts, and the defendants, in Mississippi and South Carolina. Daynard's suit arises out of these Massachusetts activities, which were instrumental to the formation of the disputed oral contract.") (citations omitted).

Bedard also personally availed itself of the privilege of conducting business in Massachusetts. To determine purposeful availment, the Court should look to whether Bedard could foresee that it was transacting business with a Massachusetts entity and whether Bedard's actions were voluntary. Daynard, 290 F.3d at 61. In this case, Bedard knew that its agent Hellmann was based in Massachusetts. Crane Decl. ¶ 6. At all times during the negotiation of the Prime Vendor Agreement and thereafter, Bedard knew that Mr. Crane was based in Massachusetts. Crane Decl. ¶ 6. Bedard has always known that Amerisource's pharmaceutical shipments come from Mansfield, Massachusetts. Crane Decl. ¶ 7. Any time Bedard returned pharmaceutical products to Amerisource, those products were sent back to Amerisource's distribution center in Mansfield, Massachusetts. Crane Decl. ¶ 7.

Whenever Bedard had questions regarding its commercial relationship with Amerisource or products it purchased from Amerisource, Bedard personnel called Amerisource in Massachusetts. Crane Decl. ¶¶ 8-9 (128 separate calls that required follow-up were recorded between October 2003 and November 2004; Bedard made many more calls that were not recorded). When a dispute arose between Bedard and Amerisource in the summer and fall of 2004, Bedard's president Michael Nadeau sent correspondence to Mr. Crane in Massachusetts. Crane Decl. ¶¶ 10-11, Exhs. B and C. In short, Bedard consistently and voluntarily reached out to Massachusetts to transact business and it now can be subject to suit in Massachusetts.

Finally, the exercise of jurisdiction by this Court over Bedard is reasonable. In determining reasonableness, courts in this Circuit look to

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 105 S.Ct. 2174, 2184 (1985).

Michael Nadeau asserts in his Declaration that, because of his "on-call emergency pharmaceutical responsibility" "[i]t would be difficult and a substantial hardship for [he and his wife] to attend court or trial proceedings outside of Maine." Nadeau Decl. ¶ 7. Nadeau's declaration rings hollow. First, Mr. Nadeau is president of three pharmacies in Lewiston, Maine. Complaint, Exh. A at 1, 2, 7. It is unlikely Mr. Nadeau does not employ pharmacists who can operate these three pharmacies without him. Nor is it credible for Mr. Nadeau to allege that he will be able to fulfill his business responsibilities while in trial or at court appearances in

Portland, Maine but he will not be able to maintain his business if forced to attend trial 100 miles (and only a two-hour drive) further south in Boston.

Ultimately, the Due Process Clause of the Fourteenth Amendment protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Daynard, 290 F.3d at 52 (quoting Burger King, 471 U.S. at 471-72; Int'l Shoe, 320 U.S. at 319). Due process under the Fourteenth Amendment requires that a defendant have minimum contacts with the forum "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Daynard, 290 F.3d at 52, (quoting Int'l Shoe, 311 U.S. at 316).

In this case, jurisdiction is proper. Bedard's in-person activities in Massachusetts (through its agent Hellmann), its purchase of goods from Massachusetts, its phone calls to Massachusetts and its correspondence sent to Massachusetts constitute purposeful activity directed at Massachusetts. Trans National Travel, Inc. v. Sun Pacific Int'l, Inc., 10 F. Supp.2d 79, 83 (telephone calls, letters and facsimiles sent to Massachusetts sufficient to subject defendant to Massachusetts court's jurisdiction); Cunningham, 529 F. Supp. at 519 (mail, telephone calls, and billings directed to Massachusetts make jurisdiction proper in Massachusetts);

B. **Venue in This Court Is Proper**

Bedard is incorrect that venue is improper. 28 U.S.C. Section 1391(a)(2) provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . ." In this case, as set forth above, Bedard contracted with Amerisource for the sale of goods. The Prime Vendor Agreement was negotiated, in part, in

10

Massachusetts. All goods were shipped from Amerisource's Mansfield, Massachusetts Distribution Center. Crane Decl. ¶ 7. Bedard sent all returned goods back to Amerisource's Mansfield, Massachusetts Distribution Center. Crane Decl. ¶ 7. All of Bedard's questions and correspondence regarding its business transactions with Amerisource were directed to Massachusetts. Crane Decl. ¶¶ 8-11. In short, a substantial part of the events giving rise to Amerisource's claim – e.g. Amerisource's performance under the contract, delivery of goods, response to inquiries, and acceptance of returns – occurred in Massachusetts. 28 U.S.C. § 1391(a)(2).

In <u>Uffner v. La Reunion Francaise, S.A.</u>, 244 F.3d 38, 42 (1st Cir. 2001), the First Circuit explained that "[p]rior to 1990, § 1391(a) provided venue in 'the judicial district . . . in which the claim arose.' 28 U.S.C. § 1391(a) (1988). Congress amended the statute to its current form because it found that the old language 'led to wasteful litigation whenever several different forums were involved in the transaction leading up to the dispute.'" <u>Id.</u> quoting <u>Cottman Transmission Sys. V. Martino</u>, 36 F.3d 291, 294 (3d Cir. 1994). The Court continued:

> [M]any circuits have interpreted the legislative history of the 1990 amendment as evincing Congress's recognition that when the events underlying a claim have taken place in different places, venue may be proper in any number of districts.

<u>Id.</u> (citations omitted). Thus, in evaluating Section 1391(a)(2), courts "look, therefore, not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim" recognizing that venue pursuant to Section 1391(a)(2) can be proper in more than one judicial district. <u>Id.</u>

In this case, venue is proper in this district because a substantial part of the events underlying Amerisource's claim occurred here. <u>Camar Corp. v. N.R. Acquisition Corp.</u>, 1997

11

WL 118419, *6 (D. Mass March 11, 1997) (venue proper under 28 U.S.C. § 1391(a)(2) where "[plaintiff] has satisfied this Court that at least some events material to the pending claims have occurred in Massachusetts even though other substantial activities occurred in Maryland.").

Venue is also proper pursuant to 28 U.S.C. Section 1391(a)(3). That section provides that venue is proper in "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a)(3). As set forth above, Bedard transacted business in Massachusetts and its minimum contacts with Massachusetts and purposeful availment of the business opportunities presented in the Commonwealth subject it to personal jurisdiction in this Court.

### C. Venue Should Not Be Transferred

Bedard's request that the Court transfer venue should also be denied. The plaintiff's choice of forum is entitled to deference. Trans National Travel, 10 F.Supp.2d at 81 ("the plaintiff's choice of forum is entitled to great weight and 'shall not be lightly disturbed.'") (quoting Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)).

28 U.S.C. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Thus, in determining whether to transfer venue, the Court reviews the convenience of the parties, the convenience of the witnesses and the interest of justice. Trans National Travel, 10 F.Supp.2d at 81

In this case, the balance of convenience to the parties does not tip in favor of Bedard or Amerisource. Michael Nadeau, president of Bedard claims it would be difficult to attend trial in

Massachusetts. But where a transfer would simply shift the burden of litigating from the defendant to the plaintiff, the transfer should be denied. Trans National Travel, 10 F.Supp.2d at 81 ("Since a transfer to Arizona would merely shift the burden of litigating in a foreign forum from the defendant to the plaintiff, the court will not transfer the case on account of convenience of the parties.").

Ultimately, Bedard does not present any evidence to suggest that a transfer to Maine is in the interest of justice or that trial in Maine will be more convenient for witnesses than Massachusetts. In fact, the only non-party witness Amerisource has identified with information relevant to this dispute is Jack Hellmann whose office is in Norwood, Massachusetts. Crane Decl. ¶ 4. Therefore, a consideration of convenience of witnesses and the interest of justice (i.e. the ability to compel attendance of non-party witnesses) actually compels a denial of Bedard's motion in order to keep this action in Massachusetts.


## IV. CONCLUSION

For the foregoing reasons, plaintiff AmerisourceBergen Drug Corporation respectfully requests that defendant's motion to dismiss or, in the alternative, to transfer venue be denied.

Dated: March 18, 2005

BODOFF & SLAVITT

By: _____
Evan Slavitt, Esquire (466510)
Jason Caron (639117)
225 Friend Street
Boston, MA  20114-1812
Telephone:  617-742-7300
Facsimile:  617-742-9969

Of Counsel

Morton R. Branzburg, Esquire
Matthew J. Borger, Esquire
KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP
260 S. Broad Street
Philadelphia, PA  19102-5003
Telephone:  215-568-6060
Facsimile:  215-568-6603

Attorneys for Plaintiff, AmerisourceBergen Drug Corporation

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERISOURCEBERGEN DRUG CORPORATION ) ) ) ) Plaintiff, ) ) v. ) ) BEDARD PHARMACY INC., ) ) Defendant. ) ) | Civil Action No. 05-10131-PBS |

**CERTIFICATE OF SERVICE**

I, Jason Caron, hereby certify that on March 18, 2005, I served a copy of (i) Plaintiff's Opposition to Defendant's Motion to Dismiss or Transfer Venue, and (ii) the Declaration of Russell C. Crane in Opposition to Defendant's Motion to Dismiss or Transfer Venue, by first-class mail, postage pre-paid, upon counsel of record in this case.

/s/ Jason Caron
Jason Caron (BBO # 639117)
Bodoff & Slavitt LLP
225 Friend Street, 7th Floor
Boston, MA 02114-1812
617-742-7300 (phone)